IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jerman Barton, ) | C/A No.: 1:13-415-JFA-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| Sergeant James Johnson, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Jerman Barton ("Plaintiff"), proceeding pro se and in forma pauperis, is incarcerated at Lieber Correctional Institution ("LCI") in the custody of the South Carolina Department of Corrections ("SCDC"). He brings this civil action pursuant to 42 U.S.C. § 1983, alleging Sergeant James Johnson ("Defendant") used excessive force against him.

This matter comes before the court on Defendant's motion for summary judgment [Entry #26]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendant's motion. [Entry #28]. The motion having been fully briefed [Entry #32, #33], it is ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge deny Defendant's motion for summary judgment.

I.  Factual Background

The undersigned views the facts in the light most favorable to Plaintiff as the non-moving party. On June 15, 2011, Defendant was passing out food trays in the Special Management Unit ("SMU"), where Plaintiff is housed. [Entry #26-3 at 1]. Because of security concerns, inmates housed in the SMU are served meals in their cells, and the correctional officers pass the food trays to them through an opening in the cell doors. *Id*. After Defendant had placed two food trays into Plaintiff's cell for Plaintiff and his cellmate, Plaintiff stuck his arm through the flap and asked for another food tray because he believed his tray had been contaminated. [Entry #33-2]. According to Plaintiff's verified complaint, before he could remove his arm, Defendant "gassed [him] with chemical munitions" and repeatedly slammed the metal flap onto his arm "after which he leaned his body weight onto the metal flap on the cell door and onto [his] arm . . . ." [Entry #1 at 4].

When Plaintiff informed the management of LCI of the incident, Captain Clark responded on June 22, 2011, as follows: "Sir, I have spoken with Sgt. Johnson concerning this incident. I assure this won't happen again." [Entry #32-2 at 2]. Plaintiff claims he suffered a painful knot and bruising on his right arm, mental anguish, pain, and suffering.

Defendant alleges that he repeatedly ordered Plaintiff to remove his arm and that he sprayed a burst of chemical munitions into Plaintiff's cell when he refused to comply. [Entry #26-3 at 2]. In his motion for summary judgment, Defendant remained silent as to

whether he slammed the metal flap onto Plaintiff's arm as Plaintiff alleges. Plaintiff pointed out this omission in his response, and Defendant in reply attached the declaration of Captain Clark. Captain Clark was not present during the incident and therefore testifies not of his own personal knowledge. Captain Clark appears to testify from information contained in the incident report that Defendant prepared. [Entry #33-1]. In his declaration, Captain Clark also remains silent as to whether Defendant slammed the metal flap onto Plaintiff's arm. However, Captain Clark clarifies his earlier-written statement of June 22, 2011, wherein he assured Plaintiff it would not happen again. In his August 2013 declaration, Captain Clark claims that he had advised Plaintiff that Defendant "would do his best to prevent accidentally catching [Plaintiff's] arm in the cell door flap in the future." [Entry #33-1 at 3]. While the undersigned cannot make credibility determinations at this stage in the proceedings, the undersigned notes the shift in explanation and views the facts and inferences in the light most favorable to Plaintiff.

II.     Discussion

    A.     Standard on Motion for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a

movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.  Analysis

Defendant argues that he is entitled to summary judgment because: (1) Plaintiff has failed to provide sufficient evidence that Defendant violated his constitutional rights;

(2) Defendant is entitled to qualified immunity; and (3) Plaintiff has failed to exhaust his administrative remedies. [Entry #26-1].[1]

### 1.     Excessive Force Claim

Defendant argues that Plaintiff has not provided proof beyond his mere allegations that Defendant acted malicious and sadistically for the purpose of causing harm. [Entry #26-1 at 5]. In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "'[w]hen prison officials maliciously and sadistically use force to cause harm'. . . 'contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

The Supreme Court has directed courts to balance several factors in determining

---

[1] Defendant also argued that he is not a proper party pursuant to the South Carolina Tort Claims Act and that he is protected by sovereign immunity to the extent that he is sued in his official capacity. However, Plaintiff's response stated that he was not alleging any state law causes of action or suing Defendant in his official capacity. [Entry #32 at 12–13]. Therefore, the undersigned has not addresses these defenses.

whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

Here, there are disputes of material fact between Plaintiff's and Defendant's affidavits. For instance, Plaintiff claims that he was not given an opportunity to remove his arm before Defendant applied force [Entry #32 at 15], while Defendant claims he gave Plaintiff several directives to remove his arm before he applied force [Entry #26-3]. In addition, Defendant never admits or denies whether he slammed, or repeatedly slammed, the metal flap onto Plaintiff's arm and leaned his body weight on the flap with Plaintiff's arm under it, as Plaintiff claims. [Entry #32 at 15–16]. These disputes of fact are material in that they affect the court's determination of the necessity of the application for force, the relationship between the need for force and the amount of force used, and the efforts taken by Defendant to temper the amount of force used. Therefore, the undersigned recommends Defendant's motion for summary judgment be denied.

  2. Qualified Immunity

Defendant asserts that he is entitled to qualified immunity. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by this immunity. The *Harlow*

court held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

7

*Id*. at 298.

Here, a question of fact exists as to whether Defendant used excessive force against Plaintiff. At this stage in the litigation, it is unclear whether Defendant violated a clearly-established right of Plaintiff. Therefore, Defendant is not entitled to summary judgment on the basis of qualified immunity.

### 3.    Exhaustion of Administrative Remedies

Defendant contends that Plaintiff has failed to exhaust his administrative remedies. The SCDC has a two-step grievance process, whereby an inmate dissatisfied with the results of his Step 1 grievance can then file a Step 2 grievance via the institutional grievance coordinator. [Entry #26-4]. If the inmate is then dissatisfied with the results of his Step 2 grievance, he can then appeal to the South Carolina Administrative Law Court ("ALC"). *Id*. For purpose of exhaustion of administrative remedies so as to pursue a § 1983 claim in federal court, an inmate does not ordinarily need to pursue his administrative remedies past the Step 2 grievance decision. See *Johnson v. Ozmint*, 567 F.Supp.2d 806, 820, n. 5 (D.S.C. 2008); *Duncan v. Langestein*, No. 07-268, 2008 WL 153975 at *5 (D.S.C. Jan. 14, 2008) (citing *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267 at *4 n. 4 (D.S.C. May 15, 2006) (recognizing that completion of Step 2 grievance exhausts administrative remedies and § 1997(a) does not require inmates to further appeal to ALC); *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177 at *7 n. 5 (D.S.C. Oct. 31, 2007). Rather, if the prisoner is not satisfied with the response of the

Step 2 SCDC official, he may then file a complaint in federal court about the matters raised in his grievance.

Here, Plaintiff contends that he timely filed his Step 1 and Step 2 grievances and waited for the expiration of the deadline for SCDC to respond before filing his complaint in this court. [Entry #32 at 17]. Defendant contends that Plaintiff was informed that his Step 2 grievance was untimely and he had an opportunity to appeal to the ALC. [Entry #26-4 at 2]. Defendant's argument fails because there is a dispute of fact as to whether Plaintiff timely exhausted his administrative remedies and it is Defendant's burden to prove that Plaintiff has failed to exhaust his administrative remedies. *See Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 683 (4th Cir. 2005) (inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the defendant). Additionally, Plaintiff is not required to appeal the denial of a Step 2 grievance to the ALC, as Defendant asserts. Therefore, Defendant's affirmative defense that Plaintiff failed to exhaust his administrative remedies is unavailing.

III. Conclusion

For the foregoing reasons, it is recommended that the district judge deny Defendant's motion for summary judgment. [Entry #26].

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

November 21, 2013
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge

9

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).